Present:  All the Justices

ROBERT COURTLAND MOATES

OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.

v.  Record No. 960933

January 10, 1997

JOHN W. HYSLOP, ET AL.

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

In this medical malpractice action, the patient-plaintiff alleged that the physician-defendant (1) failed to inform him of the risks attendant to the medical procedure involved, and (2) failed to give him any discharge instructions.  The issue in this appeal is whether the patient was required to present expert testimony to show whether and to what extent such information should have been disclosed by the physician to the patient.

I

Robert Courtland Moates filed a motion for judgment against John W. Hyslop, M.D., and others, seeking damages for injuries Moates allegedly sustained as a result of Hyslop's negligence.  Moates claimed, inter alia, that Hyslop negligently failed to provide him with adequate preoperative and postoperative information and that such failure proximately caused his injuries.  Hyslop filed a motion for summary judgment based upon responses to requests for admissions, and, by final order entered February 7, 1996, the trial court sustained the motion and granted summary judgment in favor of Hyslop.  The trial court ruled that Moates was required to provide expert testimony in order to establish a prima facie case of negligence.  We awarded Moates this appeal.

The record contains a written statement of facts, filed pursuant to Rule 5:11(c).  In 1991, Moates was having severe and recurrent pain in his chest, abdomen, and upper back.  Moates went to his family doctor, Kevin A. Keller, M.D.  Dr. Keller diagnosed the cause of Moates' problem as either an inflamed gallbladder or gallstones and made arrangements for Moates to be seen by Hyslop, a general surgeon affiliated with Surgical Associates of Richmond, Inc.

Hyslop examined Moates and discussed generally the risks inherent in the performance of a laparoscopic cholecystectomy, a less invasive surgical excision of the gallbladder.  Hyslop, however, did not discuss with Moates the option of conventional surgery.  Hyslop has admitted that at no time did he inform Moates that the carbon dioxide that would be used to inflate Moates' abdomen could leak into his scrotum causing great swelling or that a deep vein thrombosis could result from the insufflation.

On October 2, 1991, Hyslop performed a laparoscopic cholecystectomy on Moates at Johnston-Willis Hospital.  During the surgery, carbon dioxide escaped into Moates' scrotum causing it to swell "to a huge and painful size."[1]

---

[1] Moates conceded that he had no expert witness to show that the surgery was performed improperly.  Therefore, his claim that Hyslop negligently performed the surgery was stricken and dismissed and is not a subject of this appeal.

Moates claims that, before he was discharged from the hospital, neither he nor his wife was given any instructions by Hyslop regarding postoperative care. Hyslop has no recollection of what he told Moates, but he assumes that he gave Moates the usual discharge instructions.

Moates developed a deep vein thrombosis in his right leg. As a result, he is unable to perform his work as a gunsmith to the same extent that he could prior to the surgery because his work requires constant standing.

Dr. Keller has given his professional opinion that Moates' swollen scrotum and subsequent deep vein thrombosis were caused by the insufflation.

### III

In granting summary judgment, the trial court relied upon Bly v. Rhoads, 216 Va. 645, 222 S.E.2d 783 (1976), an informed consent case. The physician-defendant in Bly had performed a hysterectomy on Bly. Following the surgery, Bly developed complications, and further hospitalization and surgery were required to correct her problems.

Bly sued her doctor, claiming, inter alia, that the doctor failed to give her sufficient information to make an informed choice about her treatment. Specifically, Bly claimed that the doctor failed to advise her that there were alternatives to the surgery and to explain to her the risks involved in a hysterectomy. Id. at 645-47, 222 S.E.2d at 784-85.

In <u>Bly</u>, we adopted the rule that, in order for a patient to recover against the physician for failure to adequately inform the patient of the alternatives to and the risks of a particular treatment, the patient is required "to show by qualified medical experts whether and to what extent information should be disclosed." <u>Id</u>. at 650-51, 222 S.E.2d at 787. We also said, however, that we could "envision situations, albeit relatively infrequent, where from ordinary human knowledge and experience the necessity of disclosure is so obvious that expert testimony should not be required." <u>Id</u>. at 650, 222 S.E.2d at 787. Moates contends that this statement in <u>Bly</u> applies to the facts of his case. We do not agree.

With respect to the issue of informed consent, we think the facts in <u>Bly</u> and those in the present case are indistinguishable, and, therefore, the rule in <u>Bly</u> controls. Consequently, we conclude that the trial court correctly ruled that Moates was required to show by qualified medical experts whether and to what extent information should have been disclosed to him by Hyslop prior to the surgery. Moates did not have an expert in the field of laparoscopic cholecystectomy surgery, and, therefore, he could not pursue the claim.

IV

As previously stated, Moates also claimed that Hyslop negligently failed to give him any postoperative instructions. The trial court, relying on the <u>Bly</u> rationale, likewise granted

- 4 -

summary judgment in favor of Hyslop, ruling that Moates was required to establish Hyslop's negligence by qualified expert testimony.[2]

The record before us suggests that Hyslop did not give Moates any postoperative instructions, and, following the operation, Moates developed a deep vein thrombosis in his right leg. Moates argues that "[i]t doesn't take an expert to establish that Moates should have been given discharge instructions." We agree that it should be obvious, even to a lay person, that a physician who has performed major surgery has a duty to give his patient postoperative instructions and that the physician's failure to give any instructions constitutes negligence per se. This, however, is only a part of the equation. Moates also has the burden of proving not only that Hyslop was negligent but also that Hyslop's negligence was the proximate cause of his injury. To establish causation, Moates was required to produce qualified expert testimony about what instructions should have been given to him and that Hyslop's failure to give such instructions proximately caused Moates' deep vein thrombosis. Consequently, we hold that the trial court did not err in granting summary judgment in favor of Hyslop on this

_____

[2]The trial court established a cut off date for the parties to identify their expert witnesses. Moates named Dr. Keller as his expert, but the court, by an order entered January 5, 1996, ruled that Dr. Keller was not qualified to testify on "the standard of care issue applicable to a general surgeon." Moates did not request leave to identify another expert and has not appealed this ruling.

claim.

V

Accordingly, we will affirm the trial court's judgment.

<u>Affirmed</u>.